1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7

8    KALILU DRAMMEH, et al.,

9                          Petitioners,          Case No. C20-0045-RAJ-MAT

10              v.                               REPORT AND RECOMMENDATION

11   LOWELL CLARK, et al.,

12                          Respondents.

13

14                      I.    INTRODUCTION

15          Petitioners Kalilu Drammeh and Fatoumata Hydara, a married couple, filed the instant

16   petition for writ of habeas corpus and complaint for declaratory and injunctive relief to challenge

17   Mr. Drammeh's arrest and detention by U.S. Immigration and Customs Enforcement ("ICE"),

18   obtain a stay of Mr. Drammeh's removal, and seek a declaration that Mr. Drammeh is a derivative

19   asylee eligible for derivative asylee status through Ms. Hydara. (Pet. (Dkt. 1).) Petitioners also

20   bring claims based on the Freedom of Information Act ("FOIA"). (*See id.*) The Court temporarily

21   stayed Mr. Drammeh's removal and directed the Government to respond to the habeas petition.

22   (Dkt. 9.) The Government has moved to dismiss, arguing that this Court does not have jurisdiction

23   to consider some of Petitioners' claims and that Petitioners' remaining claims are subject to

1   dismissal. (Mot. (Dkt. 10).) Petitioners filed an opposition (Resp. (Dkt. 14)), and the Government

2   filed a reply (Reply (Dkt. 15)).

3        Having considered the parties' submissions, the balance of the record, and the governing

4   law, the Court recommends that the Government's motion to dismiss be GRANTED, Petitioners'

5   habeas petition be DENIED, the stay of removal be VACATED, and this action be DISMISSED

6   with prejudice.

7                    II.        BACKGROUND

8        Mr. Drammeh, a citizen of the Republic of the Gambia, first entered the United States in

9   1994 on a B1/B2 visitor visa. (Lambert Decl. (Dkt. 11), Ex. A at 2; Pet. at ¶ 26.) On December 8,

10  2008, an immigration judge ("IJ") on the non-detained docket denied Mr. Drammeh's applications

11  for asylum and other relief and granted him voluntary departure from the United States with an

12  alternate order of removal. (Schaefer Decl. (Dkt. 12) at ¶ 3.) Mr. Drammeh appealed to the Board

13  of Immigration Appeals ("BIA"), which dismissed his appeal on September 15, 2010, and granted

14  him 60 days to voluntarily depart the United States. (*Id.* at ¶ 4; Lambert Decl., Ex. B.) The BIA's

15  order informed Mr. Drammeh that if he filed a petition for review ("PFR"), the grant of voluntary

16  departure would automatically terminate and the alternate order of removal would immediately

17  take effect. (Lambert Decl., Ex. B at 4.)

18       On October 15, 2010, Mr. Drammeh filed a timely PFR with the Ninth Circuit and was

19  granted a stay of removal. (Schaefer Decl. at ¶ 5; *Drammeh v. Sessions*, No. 10-73159, Dkt. 1 (9th

20  Cir. Oct. 15, 2010).)

21       On November 15, 2010, ICE cancelled Mr. Drammeh's voluntary departure bond pursuant

22  to 8 C.F.R. § 241.3(b), placed him on supervision, which required him to regularly report while

23

1  his case was on appeal, and granted him employment authorization. (Schaefer Decl. at ¶ 6; Pet. at

2  ¶ 2.)

3        On March 2, 2012, Ms. Hydara, who is also from the Republic of the Gambia, filed an

4  application for asylum. (Lambert Decl., Ex. C.) On October 22, 2012, Petitioners married. (Pet. at

5  ¶ 3.) Ms. Hydara did not seek derivative asylum status for Mr. Drammeh by including him on her

6  asylum application when it was filed in 2012 or at her 2014 interview. (*See* Lambert Decl., Ex. C

7  at 2 (answering "no" to the question, "If in the U.S., is your spouse to be included in this

8  application?").) On August 27, 2015, the immigration court granted Ms. Hydara's application for

9  asylum, and she is now a lawful permanent resident.[1] (Pet. at ¶ 3.) Petitioners have four U.S. citizen

10 children together. (*Id.* at ¶ 28.)

11        On April 14, 2016, Ms. Hydara filed a Form I-730 Refugee/Asylee Relative Petition with

12 U.S. Citizenship and Immigration Services ("USCIS") pursuant to 8 U.S.C. § 1158(b)(3)(A),

13 requesting that Mr. Drammeh follow her to join as the spouse of an asylee. (Pet. at ¶ 5.) The statute

14 provides that "a spouse or child . . . of [a noncitizen] who is granted asylum under this subsection

15 may, if not otherwise eligible for asylum under this section, be granted the same status as the

16 [noncitizen] if accompanying, or following to join, such [noncitizen]." 8 U.S.C. § 1158(b)(3)(A).

17 An applicant for derivative asylum status must demonstrate that the marriage relationship existed

18 at the time the principal's asylum application was approved. 8 C.F.R. § 208.21(b). In addition, the

19 burden of proof is on the principal to establish by a preponderance of the evidence that the

20 derivative asylum applicant is an eligible spouse or child. 8 C.F.R. § 208.21(f).

21

22

23

---

[1] Counsel for Petitioners states in their response brief that he reviewed an audio recording of Ms. Hydara's August 27, 2015 immigration court hearing and that her counsel verbally requested that the IJ include Mr. Drammeh in her asylum application. (Resp. at 16-17.) Counsel has not submitted a copy of that recording to the Court.

REPORT AND RECOMMENDATION - 3

On April 4, 2017, after two reinstatements and a placement of the case in abeyance on Mr. Drammeh's motion, the Ninth Circuit dismissed Mr. Drammeh's petition for review without prejudice for failure to prosecute. *Drammeh*, No. 10-73159, Dkt. 57 (9th Cir. Apr. 4, 2017).

On October 31, 2018, USCIS issued a Notice of Intent to Deny Ms. Hydara's I-730 petition seeking derivative asylee status for Mr. Drammeh and giving her 30 days to respond. (Lambert Decl., Ex. D at 5.) Ms. Hydara did not file a response, and on December 12, 2018, USCIS denied her petition. (*Id.*, Ex. D.) USCIS concluded that Ms. Hydara had not shown that her marriage to Mr. Drammeh was valid. (*Id.*, Ex. D at 1.) USCIS also found that Mr. Drammeh did not warrant a favorable exercise of discretion. (*Id.*) The decision noted that Mr. Drammeh previously filed applications for benefits with the Immigration and Naturalization Service ("INS") under two separate identifies with different birth dates and countries of origin. (*Id.* at 1-2, 6.) For one of the applications, Mr. Drammeh had submitted counterfeit documents. (*Id.* at 4.) In addition, USCIS denied a previous application to register Mr. Drammeh's permanent residence based on a fraudulent marriage to a U.S. citizen. (*Id.* at 2, 6.) USCIS's denial of Ms. Hydara's I-730 petition was not appealable. *See* 8 C.F.R. § 208.21(e) ("No appeal shall lie from this decision.").

Also in December 2018, ICE sent Mr. Drammeh a letter instructing him to report to the local ICE office on February 5, 2019. (Schaefer Decl. at ¶ 5.) When Mr. Drammeh reported with his attorney as directed, ICE provided him with a copy of his expired Gambian passport and instructed him to bring documentation to his next report date demonstrating that he had applied for a new passport. (*Id.* at ¶ 18.) On or about May 13, 2019, ICE sent an independent request for a travel document to the Gambian Embassy. (*Id.* at ¶ 19.) On August 16, 2019, the Gambian Embassy issued a temporary travel document for Mr. Drammeh, which was valid until February 16, 2020. (*Id.* at ¶ 21.) Mr. Drammeh reported to the ICE office on August 20, 2019, but ICE had

not yet received the travel document, so it instructed him to report again on November 20, 2019. (*Id.* at ¶ 20.)

When Mr. Drammeh reported on November 20, 2019, ICE informed him that the travel document had been issued and instructed him to plan to depart the United States by January 21, 2020, and to report back on December 18, 2019, with evidence that he had purchased an airline ticket departing the United States. (*Id.* at ¶ 22.) ICE also placed Mr. Drammeh on a GPS ankle monitor as part of ICE's alternative to detention ("ATD") program. (*Id.*) These plans were intended to allow Mr. Drammeh time to wrap up his affairs and voluntarily comply with the final order of removal. (*Id.*)

On December 17, 2019, Petitioners emailed two FOIA requests to USCIS and two FOIA requests to the Executive Office for Immigration Review ("EOIR"). (Pet. at ¶ 7; Lambert Decl., Exs. G, H, J, K.)

Also on December 17, 2019, Mr. Drammeh's counsel informed the ATD case officer that Mr. Drammeh had not purchased an airline ticket to depart the United States. (Schaefer Decl. at ¶ 23.) ICE determined that if Mr. Drammeh did not bring an airline ticket to his appointment the next day, he would be taken into custody to effect his removal from the United States. (*Id.*)

On December 18, 2019, Mr. Drammeh reported to ICE but had not purchased an airline ticket as instructed. (*Id.* at ¶ 24.) As a result, ICE revoked his release and took him into custody to effect his removal to the Republic of the Gambia. (*Id.*; *see also* Lambert Decl., Exs. E, F.) ICE served him with a Notice of Revocation of Release, which explained there was a change of circumstances in his case because ICE had obtained a travel document and noted that he was required to cooperate in his removal. (Lambert Decl., Ex. E (citing 8 C.F.R. § 241.13).) ICE also provided Mr. Drammeh with an initial informal interview to afford him the opportunity to respond

to the reasons for the revocation of his release, but he declined to offer a statement. (Schaefer Decl. at ¶ 24; Lambert Decl., Ex. E at 3.) ICE then scheduled Mr. Drammeh's removal for January 31, 2020. (Schaefer Decl. at ¶ 25.)

On January 10, 2020, Petitioners filed the instant action along with a motion for a temporary stay of removal, which the Court granted. (Pet.; Dkts. 2, 9.) In the petition, Petitioners: (1) seek a declaration that Mr. Drammeh is a derivative asylee eligible for derivative asylee status under 8 U.S.C. § 1158(b)(3)(A); (2) allege the arrest and detention of Mr. Drammeh, without notice or bond, violates the Immigration and Nationality Act ("INA"), is arbitrary and capricious in violation of the Administrative Procedures Act ("APA"), and violates the Due Process Clause of the Fifth Amendment; (3) claim that the Government's failure to timely respond to their FOIA requests violates 5 U.S.C. § 552; and (4) assert that the Government's failure to respond to their FOIA requests before making a decision to execute Mr. Drammeh's removal order violates the Due Process Clause. (Pet. at 9-10.) In addition, Petitioners seek a stay of Mr. Drammeh's removal and his release from immigration detention. (*Id.*)

On January 24, 2020, and January 30, 2020, EOIR responded to Petitioners' FOIA requests. (Lambert Decl., Exs. L, M.) On January 31, 2020, USCIS responded to Ms. Hydara's FOIA request. (*Id.*, Ex. I.) On February 28, 2020, USCIS responded to Mr. Drammeh's FOIA request. (Supp. Lambert Decl. (Dkt. 16), Exs. N, O.)

III.    <u>DISCUSSION</u>

In moving to dismiss, the Government argues (1) 8 U.S.C. § 1252(g) strips the Court of jurisdiction to stay Mr. Drammeh's removal while he pursues additional administrative remedies; (2) the Court does not have jurisdiction to reverse USCIS's discretionary denial of Ms. Hydara's I-730 petition by declaring that Mr. Drammeh is a derivative asylee eligible for derivative asylee

REPORT AND RECOMMENDATION - 6

status under 8 U.S.C. § 1158(b)(3)(A); (3) ICE lawfully arrested and detained Mr. Drammeh; and (4) Petitioners' FOIA claims should be dismissed as unripe and/or moot. (*See generally* Mot.) For the reasons discussed below, the Court concludes that § 1252(g) does not apply to Petitioners' claims, it has jurisdiction to review USCIS's eligibility determination but not the discretionary denial of Ms. Hydara's I-730 petition, ICE lawfully arrested and detained Mr. Drammeh, and the FOIA claims are moot.

A.     Jurisdiction to Issue Stay of Removal

The Government relies on § 1252(g) to argue that the Court does not have jurisdiction to stay Mr. Drammeh's removal while he seeks additional administrative remedies. (Mot. at 10-14 (collecting cases from this District finding that § 1252(g) barred consideration of the asserted claims).) Petitioners respond that their request for a stay does not run afoul of § 1252(g) because their claims arise from the denial of Ms. Hydara's I-730 petition, not the decision to execute Mr. Drammeh's removal order. (Resp. at 2-6.) As explained below, the Court agrees with Petitioners.

1.     *Statutory Framework*

Federal district courts may grant a writ of habeas corpus if a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which repealed the existing scheme for judicial review of final orders of deportation and replaced it with a more restrictive scheme. *See Reno v. Am.-Arab Anti-Discrimination Committee*, 525 U.S. 471, 474 (1999) ("*AADC*"). Among other amendments to the INA, the IIRIRA added the following provision:

> Except as provided in this section . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any [noncitizen] under this chapter.

REPORT AND RECOMMENDATION - 7

8 U.S.C. § 1252(g) (1996) (emphases added). In the REAL ID Act of 2005, Congress amended § 1252(g) to clarify that the statute's jurisdictional restrictions applied to habeas actions. *See* REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310-11 (amending 8 U.S.C. § 1252(g)). Section 1252(g) now provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), *including section 2241 of Title 28, or any other habeas corpus provision,* and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter.

8 U.S.C. § 1252(g) (2017) (emphasis added).

The REAL ID Act also amended the INA to "expressly eliminate[] habeas review over all final orders of removal . . . ." *A. Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007). The INA now provides that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). In addition,

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove [a noncitizen] from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).[2] Courts have described § 1252(b)(9) as a "zipper" clause because it consolidates judicial review to the courts of appeals. *See, e.g.*, *AADC*, 525 U.S. at 483. "Through this section, 'Congress made clear that review of a final removal order is the only mechanism for

---

[2] The first sentence of § 1252(b)(9) was added by the IIRIRA, and the second was added by the REAL ID Act. *A. Singh*, 499 F.3d at 977-78.

reviewing any issue raised in a removal proceeding.'" *A. Singh*, 499 F.3d at 976 (quoting H.R. Rep. No. 109-72, at 173, 2005 U.S.C.C.A.N. 240, 298).

The REAL ID Act, however, was "not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'" *V. Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011) (quoting H.R. Rep. No. 109-72 at 175). Thus, as a general rule, noncitizens "may continue to bring collateral legal challenges to [DHS's] detention authority . . . through a petition for habeas corpus." *Id.* (quoting *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 946 (9th Cir. 2008) (alteration in *V. Singh*)).

2.    *Section 1252(g)*

At the time Congress enacted the IIRIRA, INS regularly exercised its prosecutorial discretion to defer commencing removal proceedings, adjudicating cases, and executing removal orders. *AADC*, 525 U.S. at 483-84. The "INS's exercise of this discretion opened the door to litigation in instances where the INS chose *not* to exercise it," and some courts found that the INS's exercise of prosecutorial discretion violated the equal protection or due process clauses. *Id.* at 484-85 (emphasis in original). Against this backdrop, Congress enacted § 1252(g) to "give some measure of protection to 'no deferred action' decisions and similar discretionary decisions." *Id.*; *see also id.* at 485 n.9 ("Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion.").

Section 1252(g) thus strips courts of "jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] *arising from* the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders . . . ." 8 U.S.C. § 1252(g) (emphases added). The Supreme Court has interpreted this provision narrowly and declined to hold that it "sweep[s] in any claim that can technically be said to 'arise from' the three listed actions of the

Attorney General." *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (citing *AADC*, 525 U.S. at 482). Instead, the Supreme Court has "read the language to refer to just those three specific actions themselves." *Id.* (citing *AADC*, 525 U.S. at 482-83). The Ninth Circuit has added that § 1252(g) precludes consideration of "not only a decision in an individual case *whether* to commence, but also *when* to commence, a proceeding." *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) (emphases in original). Nevertheless, courts still have jurisdiction over "many other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *AADC*, 525 U.S. at 482; *see also Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) (per curiam) ("A decision or action to violate a court order staying removal similarly falls outside of the statute's jurisdiction-stripping reach.").

Following the Supreme Court's directive, the Ninth Circuit has interpreted § 1252(g) narrowly, *Arce*, 899 F.3d at 800, and allowed injunctive relief, including stays of removal, in cases where the claims did not arise from the decision or action to commence proceedings, adjudicate cases, or execute removal orders. For example, in *Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1989), the court rejected the government's argument that the district court did not have jurisdiction to order relief that interfered with its attempts to execute deportation orders against the plaintiff-class members. *Id.* at 1052. The court concluded that the plaintiffs' challenge to procedures used in their removal proceedings did not implicate the discrete actions identified in § 1252(g) and instead were "general collateral challenges to unconstitutional practices and policies used by the agency." *Id.* (quoting *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991)). Because the district

court had jurisdiction over the plaintiffs' claims, the Ninth Circuit determined it also had jurisdiction to order adequate remedial measures, including stays of removal. *Id.* at 1053.

The Ninth Circuit has also assumed jurisdiction over a case challenging a directive issued by the BIA Chairman and the Chief Immigration Judge ordering IJs to stop issuing decisions granting suspension of deportation. *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1117-18 (9th Cir. 2001). The court explained that the "situation from which plaintiffs seek relief is closely akin to a decision to include provisions in a final deportation order," which the Supreme Court had identified as falling outside the scope of § 1252(g), because it directed IJs "*not* to include certain provisions in a final decision." *Id.* at 1118 (citing *AADC*, 525 U.S. at 482, emphasis in original). The court also explained that § 1252(g) was "aimed at preserving prosecutorial discretion," and that the immigration courts did not have the authority to exercise such discretion. *Id.* at 1119. Therefore, the court affirmed the district court's entry of an injunction enjoining the directive. *Id.* at 1122.

As a final example, the Ninth Circuit in *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004) (en banc), held that § 1252(g) did not strip the district court of jurisdiction to enter injunctive relief. *Id.* at 1155. The defendants, two lawful permanent residents, were convicted of several crimes; the trial judge sentenced them as adults even though they were eligible for sentencing under the Federal Youth Corrections Act ("FYCA") and issued a Judicial Recommendation Against Deportation ("JRAD"), which barred the INS from deporting them on the basis of their convictions. *Id.* at 1148. Several years later, Congress amended the immigration laws, which provided the INS with new grounds upon which to seek the defendants' deportation. *Id.* at 1149. Subsequently, the district court set aside their convictions pursuant to the FYCA and issued a broad order sealing the record of their convictions. *Id.* at 1150-51.

1    One of the defendants then filed a complaint in the district court challenging the retroactive

2    application of the statutory amendments to him and seeking "a permanent injunction barring the

3    INS from applying the 1988 and 1990 statutory changes to him." *Id.* at 1151. The district court

4    granted the requested relief, which had the practical effect of making the "court's previously issued

5    JRAD a complete bar to the INS's attempts to deport" the defendant. *Id.* The Ninth Circuit held

6    that § 1252(g) did not bar the injunction proceeding because the "gravamen" of the defendant's

7    claim did not arise from the decision or action to commence proceedings. *Id.* at 1155. The court

8    explained, "The district court may consider a purely legal question that does not challenge the

9    Attorney General's discretionary authority, even if the answer to that legal question—a description

10   of the relevant law—forms the backdrop against which the Attorney General later will exercise

11   discretionary authority." *Id.*

12       3.    *Section 1252(g) Does Not Preclude Consideration of Petitioners' Claims*

13       Based on the authority discussed in the previous section, it is clear that the mere fact a

14   habeas petitioner is seeking a stay of removal is not dispositive of whether the Court has

15   jurisdiction. The Court must instead look beyond the request for a stay to the underlying claim and

16   dismiss for lack of jurisdiction where the claim arises from the decision or action to execute a

17   removal order. *See Velarde-Flores v. Whitaker*, 750 Fed. Appx. 606, 607 (9th Cir. 2019)

18   (unpublished) ("Because this petition arises from the government's decision to execute valid

19   orders of removal, it facially falls within the statutory jurisdictional bar. The decision whether to

20   remove [noncitizens] subject to valid removal orders who have applied for U-visas is entirely

21   within the Attorney General's discretion."); *Garcia-Herrera v. Asher*, 585 Fed. Appx. 439, 440

22   (9th Cir. 2014) (unpublished) (holding that challenge to ICE's decision not to delay petitioner's

23   removal pending adjudication of his application for the Deferred Action for Childhood Arrivals

REPORT AND RECOMMENDATION - 12

1  ("DACA") program "constitutes a challenge to ICE's decision to execute a removal order" and is

2  barred by § 1252(g)).

3        Petitioners' underlying claim challenges the denial of Ms. Hydara's I-730 petition, not the

4  execution of Mr. Drammeh's removal order. The Seventh Circuit discussed an analogous situation

5  in *Fornalik v. Perryman*, 223 F.3d 523 (7th Cir. 2000), and determined that § 1252(g) did not

6  preclude jurisdiction. The petitioner in *Fornalik* came to the United States with his mother and

7  brothers from Poland on a tourist visa to join his father, who had become a permanent resident.

8  *Fornalik*, 223 F.3d at 525-26. He applied for adjustment of status to permanent resident under a

9  provision of the IIRIRA. *Id.* at 526. The INS director denied his request. *Id.* He was then placed in

10  removal proceedings along with his mother and brothers. *Id.* For various reasons, his removal

11  proceedings were adjudicated before those of his family members, and the INS planned to send

12  him back to Poland without his family, even though he was a minor. *Id.*

13        As a result of this predicament, the petitioner filed with the INS Vermont Service Center a

14  Form I-360 Petition for Amerasian, Widow, or Special Immigrant based on his condition as an

15  abused child of a visa recipient. *Id.* at 527. He also filed a habeas petition based on the theory that

16  he was entitled to an immediate adjustment of status. *Id.* The district court dismissed his habeas

17  petition for lack of jurisdiction under § 1252(g), finding that his claim arose from the Attorney

18  General's decision to commence removal proceedings against him. *Id.* at 528. The petitioner

19  appealed this decision, and before the Seventh Circuit had the opportunity to decide his appeal,

20  the Vermont Service Center granted his I-360 petition and notified him that it would defer action

21  on his removal order for 15 months unless it provided him appropriate notice of reasonable cause

22  to terminate the deferred action decision prior to that time. *Id.* at 528-29. The Chicago INS office,

23  however, proceeded to enforce the removal order. *Id.* at 525.

1    On appeal, the INS argued that § 1252(g) precluded the court from staying execution of

2    the removal order. *Id.* at 530. The court rejected the government's argument, explaining:

3        Here, [the petitioner's] claim that he is entitled to an adjustment of status to lawful
         permanent resident has little to do with a "decision or action by the Attorney

4        General to commence proceedings, adjudicate cases, or execute removal orders."
         He asserts instead that the district director's denial of his December 1996

5        adjustment of status application was incorrect as a matter of law. Since the INS did
         not issue a Notice to Appear (the initial filing in a removal case) until more than

6        ten months later, on October 14, 1997, it is hard to see how we should construe his
         complaint as one that requests relief from a decision to commence proceedings.

7        Similarly, although [the petitioner] obviously wants this court to stop the execution
         of a removal order, that fact comes into the case only incidentally. His claim is not

8        that the Attorney General is unfairly executing a removal order, but rather that
         a prior, unrelated error makes his removal improper. This makes our case entirely

9        different from other decisions of this circuit that have applied *AADC*. *See, e.g.,*
         *Fedorca v. Perryman*, 197 F.3d 236 (7th Cir. 1999) (challenge to a decision to

10       execute a removal order), *Botezatu v. INS*, 195 F.3d 311 (7th Cir. 1999) (challenge
         to a refusal to grant humanitarian parole instead of enforcing removal order).

11

12   *Id.* at 532.

13       Like the petitioner in *Fornalik*, who complained about the denial of his application for

14   adjustment of status, Petitioners here complain about the denial of Ms. Hydara's I-730 petition.

15   Although Petitioners did not file this action until ICE attempted to remove Mr. Drammeh, their

16   claim nevertheless arose from USCIS's prior denial, not ICE's discretionary decision to execute

17   Mr. Drammeh's removal order. As the Seventh Circuit explained, "His claim is not that the

18   Attorney General is unfairly executing a removal order, but rather that a prior, unrelated error

19   makes his removal improper." *Id.* This conclusion is in accord with the relevant Ninth Circuit

20   authority, which has assumed jurisdiction where the petitioner challenges a specific government

21   action other than the decision to commence proceedings, adjudicate a case, or execute a removal

22   order. *Compare Arce*, 899 F.3d at 799-800 (assuming jurisdiction over challenge to violation of

23   court-ordered stay); *Hovsepian*, 359 F.3d at 1155-56 (assuming jurisdiction over challenge to

REPORT AND RECOMMENDATION - 14

1    retroactive application of statutory amendments); *Barahona-Gomez*, 236 F.3d at 1118 (assuming

2    jurisdiction over challenge to directive from immigration court); *Catholic Soc. Servs., Inc. v. INS*,

3    232 F.3d 1139, 1149-50 (9th Cir. 2000) (en banc) (assuming jurisdiction over challenge to INS

4    policy as inconsistent with statute); *Walters*, 145 F.3d at 1053 (assuming jurisdiction over

5    challenge to government procedures during document fraud proceedings); *with Verlarde-Flores*,

6    750 Fed. Appx. at 607 (no jurisdiction over challenge to removal while U-visa application was

7    pending); *Garcia-Herrera*, 585 Fed. Appx. at 440 (no jurisdiction over challenge to ICE's decision

8    not to delay removal pending adjudication of DACA application). Therefore, § 1252(g) does not

9    strip this Court of jurisdiction.

10   B.    <u>Jurisdiction to Review Denial of I-730 Petition</u>

11          Petitioners assert that this Court has jurisdiction to reverse USCIS's denial of Ms. Hydara's

12   I-730 petition under 28 U.S.C. § 1331 and the APA. (Resp. at 7.) "[A]gency actions are generally

13   reviewable under federal question jurisdiction, pursuant to 28 U.S.C. § 1331," unless a statute has

14   otherwise deprived the federal courts of such jurisdiction. *Spencer Enterprises, Inc. v. United*

15   *States*, 345 F.3d 683, 687 (9th Cir. 2003) (citing *Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

16   The APA "generally provides the standards of review for agency action [but] also withdraws

17   jurisdiction to review agency decisions that are 'committed to agency discretion by law.'" *Id.* at

18   688 (quoting 5 U.S.C. § 701(a)(2)). In addition, the APA does not apply when another statute bars

19   judicial review. 5 U.S.C. § 701(a)(1); *Mohsenzadeh v. Kelly*, 276 F. Supp. 3d 1007, 1014 (S.D.

20   Cal. 2017).

21          The Government asserts that both the APA and the IIRIRA preclude judicial review of

22   Petitioners' claim. (Mot. at 16-17.) The Ninth Circuit has explained that "any determination that

23   passes the more stringent IIRIRA test, remaining subject to judicial review, also passes the lower

bar of the APA test." *ANA Intern., Inc. v. Way*, 393 F.3d 886, 891 (9th Cir. 2004). Accordingly, the Court limits its jurisdictional discussion to the applicable provision of the IIRIRA, 8 U.S.C. § 1252(a)(2)(B)(ii). As discussed below, the Court concludes that the IIRIRA does not strip it of jurisdiction over nondiscretionary eligibility requirements but that it cannot review the ultimate discretionary decision of whether to grant or deny an I-730 petition.

Section 1252(a)(2)(B) provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, *no court shall have jurisdiction to review*--

> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

> (ii) *any other decision or action* of the Attorney General or the Secretary of Homeland Security *the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security*, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B) (emphases added). Section 1252(a)(2)(B)(ii) applies only if two conditions are met. *Perez Perez v. Wolf*, 943 F.3d 853, 866 (9th Cir. 2019). "First, 'the language of the statute in question must provide the discretionary authority.'" *Id.* (quoting *Spencer*, 345 F.3d at 689). "Second, the statute must provide 'pure discretion, rather than discretion guided by legal standards.'" *Id.* (quoting *Spencer*, 345 F.3d at 690). The Ninth Circuit has explained:

> Another example of the type of decisions whose authority is specified by statute to be entirely discretionary, and would therefore be covered by § 1252(a)(2)(B)(ii), is the granting of asylum. The Attorney General "*may* grant asylum" to [noncitizens] who qualify, 8 U.S.C. § 1158(b)(1) (emphasis added), but need not. Despite the fact that there may be many non-discretionary elements of asylum eligibility, the ultimate authority whether to grant asylum rests entirely in the discretion of the Attorney General. Congress specifically exempted asylum determinations from §

1252(a)(2)(B)(ii)[3], but this exemption demonstrates its recognition that such decisions would otherwise be covered.

*Spencer Enterprises, Inc.*, 345 F.3d at 690; *see also Poursina v. USCIS*, 936 F.3d 868, 871 (9th Cir. 2019) ("Congress's use of 'may'—rather than 'must' or 'shall'—brings along the usual presumption of discretion."). The Ninth Circuit has recognized that its interpretation of § 1252(a)(2)(B)(ii) is similar to its interpretation of "committed to agency discretion by law" under the APA, 5 U.S.C. § 701(a)(2), but concluded that the two provisions are not identical:

> As noted above, under the APA, even a decision that is wholly discretionary by statute may be reviewed if regulations or agency practice provide standards by which an agency's conduct may be judged. Under § 1252(a)(2)(B)(ii), such standards must be found in the statutes; if the statute specifies that the decision is wholly discretionary, regulations or agency practice will not make the decision reviewable.

*Spencer Enterprises, Inc.*, 345 F.3d at 690-91; *see also ANA Intern., Inc.*, 393 F.3d at 893 ("Under *Spencer*, the scope of the § 1252 inquiry, unlike the APA inquiry it supersedes, is limited to the statute; standards gleaned from agency practice cannot provide a basis for review.").

The Ninth Circuit has not addressed the applicability of § 1252(a)(2)(B)(ii) to USCIS's decision to grant or deny derivative asylum status under § 1158(b)(3)(A), which provides, "A spouse or child . . . of [a noncitizen] who is granted asylum under this subsection *may* . . . be granted the same status as the [noncitizen] if accompanying, or following to join, such [noncitizen]." 8 U.S.C. § 1158(b)(3)(A) (emphasis added).

The Government contends that the decision to grant or deny derivative asylum status is committed to agency discretion by § 1158(b)(3)(A). (Mot. at 16.) Numerous courts have reached

---

3 Section 1252(a)(2)(B)(ii) allows judicial review of "the granting of relief" under 8 U.S.C. § 1158(a), which provides that noncitizens who are physically present or arrive in the United States "may apply for asylum in accordance with this section . . . ." 8 U.S.C. § 1158(a)(1).

REPORT AND RECOMMENDATION - 17

the same conclusion. *See, e.g.*, *Milikovic v. Ashcroft*, 366 F.3d 580, 582 (7th Cir. 2004) ("the grant of derivative status to the spouse of a successful applicant for asylum is not automatic but requires an exercise of discretion by the immigration authorities"); *Mohtashemi v. Ashcroft*, 95 Fed. Appx. 298, 301 (10th Cir. 2004) ("Derivative asylum under § 1158(b)(3), however, is discretionary."); *Doe v. Risch*, 398 F. Supp. 3d 647, 654-55 (N.D. Cal. 2019) ("The decision to grant or deny derivative asylum status is committed to agency discretion by statute. The ultimate decision to grant or deny Plaintiffs' I-730 petition is therefore insulated from judicial review." (internal citation omitted)); *Ngassam v. Chertoff*, 590 F. Supp. 2d 461, 464 (S.D.N.Y. 2008) (finding no jurisdiction to review denial of I-730 petition because USCIS's decision to deny derivative asylum status was discretionary); *Farag v. USCIS*, 531 F. Supp. 2d 602, 608 (S.D.N.Y. 2008) (finding no mandamus jurisdiction because "[g]ranting derivative asylum rests entirely within the discretion of the USCIS"); *Huli v. Way*, 393 F. Supp. 2d 266, 270 (S.D.N.Y. 2005) (same); *Saad v. U.S. Dep't of Homeland Sec.*, No. 09-8428, 2011 WL 2555290, at *3 (C.D. Cal. June 27, 2011) ("[I]t is well established that the decision to grant or deny derivative status to the spouse or children of a successful asylum applicant is committed to the discretion of immigration authorities."); *Singh v. USCIS*, No. 06-7189, 2009 WL 10697761, at *2 (N.D. Cal. May 28, 2009) ("[T]his Court has no jurisdiction to review USCIS's discretionary decision to deny the I-730 derivative asylum petitions.").

Petitioners nevertheless argue that § 1252(a)(2)(B)(ii) does not preclude their claim because the decision on a derivative asylum petition includes both nondiscretionary and discretionary components. (Resp. at 10.) Specifically, Petitioners contend that USCIS's finding that Ms. Hydara failed to establish Mr. Drammeh's identity and failed to establish that he qualified as a spouse of an asylee are factual and evidentiary issues that do not involve any exercise of

1   discretion on the part of USCIS. (*Id.*) According to Petitioners, because USCIS's denial of Ms.

2   Hydara's I-740 petition was not purely based on the exercise of discretion, judicial review of the

3   denial is not barred by § 1252(a)(2)(B)(ii). (*Id.*)

4          Although the Ninth Circuit has not considered Petitioners' arguments in the context of §

5   1158(b)(3)(A), it has addressed § 1252(a)(2)(B)(ii)'s application where a statute involves both

6   discretionary and nondiscretionary elements. For example, in *Singh v. Holder*, 591 F.3d 1190 (9th

7   Cir. 2010), the Ninth Circuit considered its jurisdiction to review the BIA's denial of a hardship

8   waiver provided in 8 U.S.C. § 1186a(c)(4), which grants the Attorney General or his designee the

9   discretion to award relief to a noncitizen who demonstrates he or she satisfies the eligibility

10  requirements. The court explained that the granting of the waiver involves two steps. *Id.* at 1194.

11  First, the BIA must determine whether the petitioner demonstrates eligibility. *Id.* Second, if the

12  petitioner satisfies the first requirement, the BIA "may" grant the waiver. *Id.* The Ninth Circuit

13  concluded that the second decision—whether to grant the waiver—was "unambiguously left to the

14  discretion of the Attorney General," and therefore the ultimate decision whether to grant a waiver

15  was unreviewable under § 1252(a)(2)(B)(ii). *Id.* (internal quotation and citation omitted).

16  However, the statute did not specify that the power to determine the threshold question of

17  eligibility was "entirely within [the Attorney General's] judgment or conscience." *Id.* (quoted

18  source omitted, alteration in *Singh*). Because the statute did not include language specifying that

19  the Attorney General has discretion to determine whether the petitioner satisfied the eligibility

20  requirements, "this determination is not committed to the Attorney General's discretion and so is

21  reviewable." *Id.* at 1195.

22         The Ninth Circuit reached a similar conclusion in *Gutierrez v. Holder*, 662 F.3d 1083 (9th

23  Cir. 2011), which involved a statute that granted the IJ discretionary authority to grant relief if the

REPORT AND RECOMMENDATION - 19

1    applicant established certain facts, including good moral character. *Id.* at 1087 (citing 8 U.S.C. §

2    1259). The IJ found that the applicant had not established good moral character and denied

3    discretionary relief on this basis. *Id.* at 1086. The court held that it could not review the ultimate

4    grant or denial of relief, but that 8 U.S.C. § 1252(a)(2)(B)(ii) did not deprive it of jurisdiction to

5    review the determination regarding good moral character. *Id.* at 1088-89.

6    The Court concludes that the same analysis applies to the statute at issue here. To reiterate,

7    § 1158(b)(3)(A) provides that "[a] spouse or child . . . of a [noncitizen] who is granted asylum

8    under this subsection *may* . . . be granted the same status as the [noncitizen] if accompanying, or

9    following to join, such [noncitizen]." 8 U.S.C. § 1158(b)(3)(A) (emphasis added). As many courts

10   have concluded, the ultimate decision whether to grant derivative asylee status is left to the

11   discretion of USCIS. *See, e.g.*, *Milikovic*, 366 F.3d at 582; *Doe*, 398 F. Supp. 3d at 654-55;

12   *Ngassam*, 590 F. Supp. 2d at 464; *Farag*, 531 F. Supp. 2d at 608; *Huli*, 393 F. Supp. 2d at 270.

13   With respect to the eligibility requirement—that the person seeking derivative asylee status be the

14   principal's spouse or child—the statute does not state that this determination is discretionary. Thus,

15   in accordance with *Singh* and *Gutierrez*, the Court concludes that § 1252(a)(2)(B)(ii) does not strip

16   it of jurisdiction to review USCIS's eligibility determination, but the statute does preclude review

17   the ultimate discretionary decision.[4]

18   If USCIS in this case had exercised its discretion assuming Mr. Drammeh was eligible, the

19   Court would dismiss this action without further discussion because any error with respect to

20   eligibility would not have affected the ultimate determination, which is not subject to judicial

---

23   [4] Given this conclusion, the Court does not have jurisdiction to consider Petitioners' arguments that the USCIS Adjudicator's Field Manual limits USCIS's use of discretion and that international law must guide USCIS's exercise of discretion. (Resp. at 10-12, 13-14.)

REPORT AND RECOMMENDATION - 20

1    review. *Cf. San Pedro v. Ashcroft*, 395 F.3d 1156, 1157-58 (9th Cir. 2005).[5] However, USCIS's

2    exercise of discretion was based in part on the determination that Mr. Drammeh was ineligible.

3    (*See* Lambert Decl., Ex. D at 5 ("USICS has considered the evidence, including the beneficiary's

4    immigration record, and has decided to deny your petition within its discretion. USCIS

5    acknowledges the positive factors in your case, including the fact that you and the beneficiary have

6    three U.S. citizen children. The fact that the beneficiary is the spouse of an asylee would be a

7    positive factor, however it appears the beneficiary does not qualify as the spouse of an asylee

8    because he has not submitted evidence that his marriage to Mariam Drammeh was ever

9    terminated.").) Accordingly, the Court deems it appropriate to review USCIS's eligibility analysis

10   under the APA. *See Gutierrez*, 662 F.3d at 1087-88 (reviewing eligibility requirement that IJ relied

11   on in declining to grant discretionary relief).

12   C.    <u>APA</u>

13        Under the APA, a reviewing court "shall . . . hold unlawful and set aside agency action,

14   findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise

15   not in accordance with the law." 5 U.S.C. § 706(2)(A). This "standard of review is a narrow one,"

16   demanding a "searching and careful" inquiry that assesses "whether the decision was based on a

17   consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens*

18   *to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *overruled on other grounds by*

19

20   ────────────────────

     [5] In *San Pedro*, the petitioner sought review of the BIA's summary affirmance of the IJ's decision to deny him a

21   waiver of removal under 8 U.S.C. § 1227(a)(1)(H), which allowed the immigration courts to grant discretionary relief
     to eligible applicants. *San Pedro*, 395 F.3d at 1156. The IJ found the petitioner statutorily ineligible for the waiver
     because he did not possess an immigrant visa or equivalent document as required by the statute. *Id.* at 1157. The IJ

22   also held that assuming the petitioner was statutorily eligible for the waiver, he did not merit the favorable exercise of
     discretion. *Id.* The Ninth Circuit held that based on the language of § 1227(a)(1)(H), § 1252(a)(2)(B)(ii) stripped it of
     jurisdiction to review the discretionary denial of the waiver, but that it did have jurisdiction "to review the statutory

23   eligibility elements." *Id.* at 1157-58. Because the BIA's decision did not indicate whether it affirmed the IJ's eligibility
     finding or the IJ's exercise of discretion, the Ninth Circuit remanded, explaining that "if the BIA clearly affirms the
     discretionary determination, we will lack jurisdiction to review San Pedro's petition under the judicial review
     provisions of . . . 8 U.S.C. § 1252(a)(2)(B)(ii) . . . ." *Id.*

1    *Califano v. Sanders*, 430 U.S. 99, 105 (1977). "The court is not empowered to substitute its

2    judgment for that of the agency." *Id.*

3         Petitioners assert two arguments in support of their claim that USCIS failed to consider all

4    the evidence before it in reaching its determination that Mr. Drammeh did not qualify as an eligible

5    spouse. (Resp. at 10.) First, they contend that USCIS improperly determined that Mr. Drammeh

6    did not present evidence of the termination of his marriage to Mariam Drammeh in the Republic

7    of the Gambia (Lambert Decl., Ex. D at 5) because Mr. Drammeh stated during the I-730 interview

8    that his marriage to Mariam Drammeh was a traditional marriage done at home, not in a court, and

9    therefore no divorce decree was necessary (*id.* at 4). (Resp. at 12.) USCIS, however, documented

10   numerous instances of Mr. Drammeh lying to immigration authorities, including regarding his

11   marriage history. (*See generally* Lambert Decl., Ex. D.) For example, Mr. Drammeh told

12   immigration authorities in 2007 that he married Haja Hydara in Senegal in 2001 and submitted

13   evidence of their March 2009 divorce to USCIS in August 2009, but he stated during his I-730

14   interview that he never married anyone in Senegal and could not offer a reasonable explanation

15   for this discrepancy. (*Id.* at 2, 5.) USCIS concluded,

16       This discrepant information regarding the beneficiary's [Mr. Drammeh's] previous
         marriages calls into question the beneficiary's marital history and whether or not
17       he was free to marry you [Ms. Hydara] on October 22, 2012, as the record is absent
         evidence of termination of his marriage from Mariam Drammeh. In addition, his
18       denial of his marriage to Haja Hydara calls into question the authenticity of the
         divorce decree he submitted from his marriage to Haja Hydara, leading USCIS to
19       believe he may have submitted fraudulent testimony and documentation to USCIS.
         Given this discrepant information and lack of a valid explanation, the record is
20       absent evidence that the beneficiary was free to marry you in 2012.

21   (*Id.* at 5.) The Court finds that USCIS's decision not to credit Mr. Drammeh's statements regarding

22   his divorce from Mariam Drammeh was reasonable and supported by the record as a whole.

23   Petitioners have not shown that this alleged error entitles them to relief under the APA.

1    Second, Petitioners take issue with USCIS's reliance on the January 2010 denial of a Form

2  I-130 Petition for Alien Relative that Mr. Drammeh's ex-wife Tina Bailey filed on his behalf while

3  they were married. (Resp. at 12-13.) Mr. Drammeh and Ms. Bailey married in April 2009 after

4  Mr. Drammeh was placed in removal proceedings. (Lambert Decl., Ex. D at 2.) Therefore, the I-

5  130 petition could not be approved unless Mr. Drammeh resided outside the United States for a

6  two-year period beginning after the date of the marriage, 8 U.S.C. § 1154(g), or Ms. Bailey

7  established "by clear and convincing evidence to the satisfaction of the Attorney General that the

8  marriage was entered into in good faith and . . . was not entered into for the purpose of procuring

9  [Mr. Drammeh's] admission as an immigrant . . . ," 8 U.S.C. § 1255(e)(3); *see also* 8 C.F.R. §

10  204.2(a)(1)(iii) (establishing general prohibition against granting visa petition if marriage occurred

11  while beneficiary was in removal proceedings and requiring applicant to produce evidence for

12  bona fide marriage exemption). Ms. Bailey submitted to USCIS her birth certificate, Mr.

13  Drammeh's employment authorization card, a copy of her divorce decree and Mr. Drammeh's

14  divorce decree from Haja Hydara, the couple's marriage certificate, vehicle insurance, and bank

15  statements from an account that was opened shortly before the I-130 interview and did not reflect

16  any transactions. (Lambert Decl., Ex. D at 3.) USCIS asked Ms. Bailey to submit additional

17  evidence that her marriage to Mr. Drammeh was bona fide, but she did not. (*Id.*) USCIS issued

18  Ms. Bailey a notice of intent to deny the I-130 petition on the grounds that she and Mr. Drammeh

19  entered into a sham marriage to circumvent immigration laws and obtain immigration benefits.

20  (*Id.*) Ms. Bailey failed to respond to the notice of intent to deny, and on January 29, 2010, USCIS

21  denied the I-130 petition based on the conclusion that the marriage was for the sole purpose of

22  gaining immigration benefits.[6] (*Id.* at 4.)

23

---

[6] Mr. Drammeh and Ms. Bailey divorced in September 2012. (Lambert Decl., Ex. D at 2.)

1    Petitioners maintain that USCIS failed to present clear and convincing evidence that Mr.

2    Drammeh and Ms. Bailey's marriage was fraudulent. (Resp. at 12.) Petitioners, however, are

3    mistaken as to the burden of proof. Because Mr. Drammeh and Ms. Bailey married after Mr.

4    Drammeh was placed in removal proceedings, the burden was on Ms. Bailey—not USCIS—to

5    establish the marriage was bona fide. *See* 8 U.S.C. § 1255(e)(3); 8 C.F.R. § 204.2(a)(1)(iii).

6    Petitioners rely on *Simko v. BIA*, 156 F. Supp. 3d 300 (D. Conn. 2015), and *Matter of Tawfik*, 20

7    I&N Dec. 166 (BIA 1990), but both cases involve 8 U.S.C. § 1154(c), a statutory provision that is

8    not applicable to Petitioners' situation.

9    In sum, Ms. Hydara bore the burden of proving by a preponderance of the evidence that

10   Mr. Drammeh was an eligible spouse. 8 C.F.R. § 208.21(f). USCIS's determination that Ms.

11   Hydara failed to establish Mr. Drammeh's identity and the validity of their marriage was not

12   arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. USCIS

13   considered the relevant evidence and its analysis and conclusions do not demonstrate clear error.

14   Accordingly, the Court recommends that Petitioners' request to declare Mr. Drammeh eligible for

15   derivative asylee status be denied.

16   D.    <u>Arrest and Detention</u>

17   The parties dispute whether ICE lawfully arrested and detained Mr. Drammeh. As

18   discussed below, the Court agrees with the Government that ICE acted within its authority when

19   it arrested and detained Mr. Drammeh to effect his removal.

20   Title 8 U.S.C. § 1231 governs the arrest and detention of noncitizens who have been

21   ordered removed. The statute provides for mandatory detention during the 90-day "removal

22   period." 8 U.S.C. §§ 1231(a)(2), (a)(1)(B). Mr. Drammeh's removal period expired years ago, and

23   there is no evidence he was detained in accordance with the statute.

There are two statutory provisions that address detention and release after the removal period has expired. Section 1231(a)(6) provides:

> [A noncitizen] ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6). Section 1231(a)(3) in turn applies to noncitizens who are not covered by § 1231(a)(6) and provides, "If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3).

There is no evidence in the record, and the Government does not argue, that Mr. Drammeh is inadmissible under § 1182 or removable under the statutory provisions specified in § 1231(a)(6). Mr. Drammeh thus argues that ICE can only detain him if it makes a finding that he presents a flight risk or danger to the community, which he contends ICE has not done. (Resp. at 14-16.) Petitioners rely primarily on *You v. Nielsen*, 321 F. Supp. 3d 351 (S.D.N.Y. 2018).[7] (Resp. at 15.)

The court in *You* explained that § 1231 lays out only two possibilities after the 90-day removal period for noncitizens like Mr. Drammeh who are not inadmissible under § 1182 or removable under the specified statutory provisions in § 1231(a)(6)—either (1) the noncitizen remains in detention upon a finding that he or she is dangerous or a flight risk, or (2) he or she is subject to supervision. *You*, 321 F. Supp. 3d at 462. The court concluded that "the plain text of the

---

[7] Petitioners also cite *Ragbir v. Sessions*, No. 18-236, 2018 WL 623557 (S.D.N.Y. Jan. 29, 2018), which is factually distinguishable as it involved a noncitizen who had received no notice ICE had obtained a travel document and who had taken no action suggesting he would not have complied with the removal order if directed to leave the country by a set date. Here, Mr. Drammeh had notice of the travel document and failed to purchase an airline ticket by the date set by ICE.

REPORT AND RECOMMENDATION - 25

1    statute does not provide ICE with the authority to detain Petitioner without a finding that his release

2    posed a risk of danger or flight." *Id.*

3          As in *You*, the Government here counters that ICE properly detained Mr. Drammeh

4    pursuant to the applicable regulations, 8 C.F.R. §§ 241.4 (continued detention of inadmissible,

5    criminal, and other noncitizens beyond the removal period) and 241.13 (determination of whether

6    there is a significant likelihood of removing a detained noncitizen in the reasonably foreseeable

7    future). Section 241.4 states that it applies to custody determinations for the noncitizens specified

8    in 1231(a)(6). *See* 8 C.F.R. § 241.4(a). Section 241.13 states that it applies to noncitizens who are

9    "subject to a final order of removal," "detained under the custody review procedures provided at

10   § 241.4 after the expiration of the removal period," and have "provided good reason to believe

11   there is no significant likelihood of removal . . . in the reasonably foreseeable future." 8 C.F.R. §

12   241.13(a). Both regulations authorize ICE to revoke release on an order of supervision to enforce

13   a removal order. *See* 8 C.F.R. §§ 241.4(l)(2)(iii) (release may be revoked in the exercise of

14   discretion when "[i]t is appropriate to enforce a removal order"), 241.13(i)(2) (release may be

15   revoked "if, on account of changed circumstances, [ICE] determines that there is a significant

16   likelihood that the [noncitizen] may be removed in the reasonably foreseeable future").

17         The court in *You* determined that by their terms, the regulations only apply to noncitizens

18   who were initially detained or released following a final order of removal pursuant to the custody

19   review procedures in § 241.4. *You*, 321 F. Supp. 3d at 463. "In other words, Respondents may only

20   revoke a release pursuant to §§ 241.4 and 241.13 if they had originally granted that release pursuant

21   to § 241.4." *Id.* Because the petitioner in *You* was neither detained nor released pursuant to § 241.4

22   following his final order of removal—he was release before his removal order became final—the

23   court concluded that the government could not revoke his release pursuant to the regulations. *Id.*

1    The Court agrees with this analysis. The regulations expressly state that they govern the detention

2    and release of only certain noncitizens, and there is no evidence Mr. Drammeh falls into these

3    categories.

4           Thus, the lawfulness of Mr. Drammeh's arrest and detention revolves around § 1231(a)(6)

5    and whether ICE has "determined" he is "unlikely to comply with the order of removal."[8] 8 U.S.C.

6    § 1231(a)(6). As an initial matter, the Court finds that the phrase "unlikely to comply with the

7    order of removal" justifies detention where the noncitizen presents a flight risk or has failed to

8    cooperate with ICE's efforts to execute the removal order. This includes Mr. Drammeh's failure

9    to purchase an airline ticket departing the United States by the deadline set by ICE. Furthermore,

10   according to ICE Deportation Officer Neil Schaefer, ICE determined on December 17, 2019, that

11   if Mr. Drammeh did not bring an airline ticket to his December 18, 2019 check-in, ICE would take

12   him into custody to effect his removal. (Schaefer Decl. at ¶ 23.) When Mr. Drammeh presented

13   himself on December 18, 2019, without an airline ticket, ICE thus took him into custody to remove

14   him. (*Id.* at ¶ 24.) The Court concludes that Mr. Drammeh's failure to timely purchase airline

15   tickets along with Officer Schaeffer's declaration demonstrate ICE's determination that Mr.

16   Drammeh was "unlikely to comply with the order of removal."[9] 8 U.S.C. § 1231(a)(6). Therefore,

17   ICE had the statutory authority to arrest and detain Mr. Drammeh.

18

19

20   _____

21   [8] The *You* court suggested that it would be appropriate for ICE to hold a hearing to determine the risks posed by the petitioner's release. *You*, 321 F. Supp. 3d at 463 ("But no hearing was held to determine the risks of Petitioner's release. Nor would a hearing be likely to find any risk . . . ."). As there is no indication in the statute that a hearing is

22   required for ICE to make the determination under § 1231(a)(6), the Court declines to adopt such a requirement.

23   [9] If ICE had informed Mr. Drammeh of this determination in its Notice of Revocation of Release, there would be no reasonable dispute that it acted in accordance with the statute. Although this omission is concerning, the Court does not believe it is sufficient under the specific facts of this case to establish ICE acted without statutory authority in arresting and detaining Mr. Drammeh.

1    E.    FOIA Requests

2         With respect to their FOIA requests, Petitioners ask the Court to declare: (1) the

3    Government's failure to respond in a timely manner violates 5 U.S.C. § 552(a); (2) USCIS's and

4    EOIR's failure to notify Petitioners of "unusual circumstances" that prevented the agencies from

5    processing their FOIA requests within the 20-day statutory limit constitutes a violation of 5 U.S.C.

6    § 552(a)(6)(B) and 6 C.F.R. § 5.5(c)(1); and (3) the Government's failure to provide copies of the

7    requested documents before making a decision to remove Mr. Drammeh constitutes a violation of

8    the Due Process Clause. (Pet. at 9.)

9         The FOIA authorizes federal district courts to enjoin federal agencies "from withholding

10   agency records and to order the production of any agency records improperly withheld from the

11   complainant." 5 U.S.C. § 552(a)(4)(B). Agencies are required "determine within 20 days

12   (excepting Saturdays, Sundays, and legal public holidays) after the receipt of a [FOIA] request

13   whether to comply with such request and shall immediately notify the person making such request"

14   of the determination. 5 U.S.C. § 552(a)(6)(A)(i). In "unusual circumstances" specified in the

15   statute, the deadline for a determination "may be extended by written notice to the person making

16   such request setting forth the unusual circumstances for such extension and the date on which a

17   determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i).

18        Petitioners submitted two FOIA requests to USCIS and two requests to EOIR on December

19   17, 2019. (Pet. at ¶ 7; Lambert Decl., Exs. G, H, J, K.) On the January 10, 2020 filing date of the

20   instant action, only 16 countable days had passed. Thus, no violation of the statute had occurred

21   at the time Petitioners filed this lawsuit and their FOIA claims were not ripe. Furthermore, to the

22   extent the FOIA claims are properly before the Court, they are now moot as USICS and EOIR

23   have provided their responses. *See Hajro v. USCIS*, 811 F.3d 1086, 1103 (9th Cir. 2016) (a party's

1    specific FOIA request claim is moot "after the agency produces all non-exempt documents and the

2    court confirms the agency's proper invocation of an exception").

3         In opposing the Government's motion to dismiss, Petitioners argue that their FOIA claims

4    are not moot because they are still awaiting responses to the requests they submitted to U.S.

5    Customs and Border Protection ("CBP"). (Resp. at 16.) But as the Government points out,

6    Petitioners did not bring a claim regarding their CBP FOIA requests and CBP is not a party to this

7    lawsuit. (*See* Pet. at 1, ¶ 7.)

8         With respect to Petitioners' due process claim, the Court notes that the allegation in the

9    petition—that "the failure of the Respondents to provide copies of the documents requested by

10   Petitioners before making a decision to remove Mr. Drammeh" violates his due process rights—is

11   factually inaccurate. ICE obtained a travel document for Mr. Drammeh in August 2019 and

12   notified him on November 20, 2019 that he would be required to purchase an airplane ticket to

13   depart the United States by December 18, 2019, and depart by January 21, 2020. Instead of

14   following ICE's directions, Petitioners filed their FOIA requests on December 17, 2019, the day

15   before Mr. Drammeh was ordered to produce an airline ticket. ICE made the decision to remove

16   Mr. Drammeh well before Petitioners filed their FOIA requests.

17        Petitioners nevertheless argue that removing Mr. Drammeh before he has an opportunity

18   to review his complete immigration file constitutes a violation of his due process rights. (Resp. at

19   16.) They rely on *Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010), which held that because the

20   government failed to provide the petitioner with the documents in his A-file during his removal

21   proceedings, he was denied an opportunity to fully and fairly litigate his removal and raise his

22   claim that he was a U.S. citizen. *Id.* at 374. Unlike the petitioner in *Dent*, however, Mr. Drammeh

23   is not in removal proceedings and does not claim any error with respect to those proceedings.

1  Petitioners fail to produce any authority establishing a due process violation under the facts of this

2  case.

3          The Court recommends that all of Petitioners' FIOA-related claims be dismissed.

4                              IV.        CONCLUSION

5          The Court recommends that the Government's motion to dismiss (Dkt. 10) be GRANTED,

6  Petitioners' habeas petition be DENIED, the temporary stay of removal (Dkt. 9) be VACATED,

7  and this action be DISMISSED with prejudice. A proposed order accompanies this Report and

8  Recommendation.

9          Objections to this Report and Recommendation, if any, should be filed with the Clerk and

10 served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and

11 Recommendation is signed. Failure to file objections within the specified time may affect your

12 right to appeal. Objections should be noted for consideration on the District Judge's motions

13 calendar for the third Friday after they are filed. Responses to objections may be filed within

14 **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be

15 ready for consideration by the District Judge on **August 7, 2020**.

16          Dated this 21st day of July, 2020.

17

18                                          _____
                                            Mary Alice Theiler
19                                          United States Magistrate Judge

20

21

22

23

REPORT AND RECOMMENDATION - 30